UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.  **CV 16-4492-MWF (GJSx)**                    Date:  **November 14, 2016**

Title:        Kevin Forestal -*v*- Barry G. Caldwell, et al.

PRESENT:  HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

| Rita Sanchez | Nichole Forrest |
|---|---|
| Courtroom Deputy | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:            ATTORNEYS PRESENT FOR DEFENDANTS:

Kathleen A. Herkenhoff                                          Dan E. Marmalefsky
Brett D. Stecker                                                       Kai S. Bartolomeo
Daniel L. Germain

**PROCEEDINGS (IN CHAMBERS):**        ORDER RE MOTION TO DISMISS AND MOTION FOR SANCTIONS [16] [19]

　　　This action is a consolidated shareholder derivative suit filed on behalf of nominal defendant STAAR Surgical Company ("STAAR") against former and current members of its Board of Directors:  Barry Caldwell, John Santos, Caren Mason, Mark Logan, Stephen Farrell, Richard Meier, John Moore, Steven Roush, Louis Silverman, and William Wall (collectively, the "Board Defendants").  Plaintiff alleges that the Board Defendants breached their fiduciary duties by actively misleading STAAR's shareholders and the market about STAAR's consolidation of manufacturing operations and STAAR's compliance with the United States Food and Drug Administration's ("FDA") regulations.

　　　Before the Court are two Motions.  The first is STAAR's Motion to Dismiss Plaintiff's Shareholder Derivative Complaint ("Motion to Dismiss"), filed August 15, 2016.  (Docket No. 16).  Plaintiff Kevin Forestal filed an Opposition to the Motion to Dismiss on October 14, 2016.  (Docket No. 24).  STAAR replied on November 21, 2016.  (Docket No. 47).

　　　STAAR subsequently filed a Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 ("Motion for Sanctions") on September 26, 2016.  (Docket No. 19).  Plaintiff filed

---

**CIVIL MINUTES—GENERAL**                                                                                   1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**                    Date:  **November 14, 2016**

Title:      Kevin Forestal -*v*- Barry G. Caldwell, et al.

his Opposition on October 3, 2016.  (Docket No. 20).  STAAR replied on October 10, 2016.  (Docket No. 23).

The Court has read and considered the papers filed on the Motions and held a hearing on **December 5, 2016**.  For the reasons set forth below, the Motion to Dismiss is **GRANTED** *with leave to amend*.  Although Plaintiff has pled adequately that three of the Board Defendants are interested for purposes of showing demand futility, Plaintiff fails to show that the fourth Board Defendant, necessary to reach the required one half, lacks independence.  The Motion for Sanctions is **DENIED** because the action was not filed frivolously.

I.   **BACKGROUND**

The Complaint alleges the following facts, which the Court takes as true and construes in the light most favorable to Plaintiff.  *See, e.g.*, *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) (restating generally-accepted principle that "[o]rdinarily, when we review a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept a plaintiff's allegations as true 'and construe them in the light most favorable' to the plaintiff" (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009))).

STAAR designs, manufactures, and sells implantable lenses used in corrective and cataract eye surgery.  (Compl. ¶ 2).  STAAR is relatively small, with 335 employees and, until recently, four manufacturing facilities worldwide.  (*Id*. ¶¶ 37-42).  STAAR's major product is the Implantable Collamer Lens ("ICL") that consists of three models: one to treat myopia, one to treat myopia with astigmatism, and one to treat hyperopia.  (*Id*. ¶¶ 37–38).  All three models have been marketed overseas for years, but only the myopic version ("MICL") received FDA approval in the United States.  (*Id*. ¶ 38).  The Toric ICL ("TCIL"), used to cure myopia with astigmatism, is currently under review with the FDA.  (*Id*.).

The FDA classifies the ICL as a "Class III" medical device, or a product deemed to pose the greatest risk to health and to require the most extensive regulation.  (Compl. ¶ 44).  One aspect of such regulation is an inspection of the manufacturing facilities to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**                                 Date:  **November 14, 2016**

Title:        Kevin Forestal -*v*- Barry G. Caldwell, et al.

ensure that the production of a Class III device is done in accordance with the approved specifications.  (*Id.* ¶ 48); *see also* 21 C.F.R. § 820.20, et seq.  The FDA, of course, does not prescribe in exacting detail the production process of every possible device but only establishes a framework within which the manufacturers must operate.  (*Id.* ¶ 53–54); 21 C.F.R. § 820.20.  As is pertinent here, the regulations require manufactures to create "design controls," which safeguard the quality of the device from its inception to obsolescence.  (Id. ¶ 52–53); 21 C.F.R. § 820.20–30.  Manufacturers are mandated, moreover, to "establish and maintain a Design History File for each type of device. . . . The Design History File must contain or reference the records necessary to demonstrate that the design was developed in accordance with the approved design plan and the requirements of this part."  (*Id.* ¶ 60); 21 C.F.R. § 820.30(j).  If a company fails to comply with these regulations, the FDA may refuse any pending requests for product approval.  (*Id.* ¶ 50).

>    A.      **STAAR's Noncompliance with FDA Regulations**

>>    1.      **MICL Approval**

STAAR has experienced difficulties in obtaining FDA approval of its devices since its first attempt at penetrating the U.S. market.  Although the FDA Ophthalmic Devices Panel recommended approval of MCIL in as early as October 2003, the authorization process experienced significant delays after an FDA inspector observed numerous deficiencies in STAAR's California manufacturing facility.  (Compl. ¶ 77).  The inspector identified the regulatory violations in a Form 483, which is used to notify the establishment's top management of any objectionable conditions uncovered during FDA inspections. (*Id*. ¶¶ 78).  The results of the inspection were immediately conveyed to STARR's senior officers, including Defendants John Santos, then-Vice President of Regulatory Affairs, and Barry Caldwell, then STAAR's Chief Executive Officer ("CEO").  (*Id.* ¶ 8).  Although the violations threatened to postpone the much-anticipated approval of MICL, STAAR did not disclose the contents of Form 483 to its investors. (*Id*. ¶ 78).

In December 2003, the FDA issued a warning letter to STAAR (the "2003 Warning Letter") memorializing the same violations. (Compl. ¶ 79).  A warning letter

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 16-4492-MWF (GJSx)**               Date:  **November 14, 2016**

Title:      Kevin Forestal -*v*- Barry G. Caldwell, et al.

is used only for "violations of regulatory significance, i.e., those that may actually lead to an enforcement action if the documented violations are not promptly and adequately corrected." (Id. ¶ 74); FDA, Regulatory Procedures Manual at 4.1 (July 2012) ("RPM"), available at http://www.fda.gov/iceci/compliancemanuals/ regulatoryproceduresmanual/default.htm. The agency's own policy states that a "Warning Letter should not be issued if the agency concludes that a firm's corrective actions are adequate and that the violations that would have supported the letter have been corrected." (*Id.*); RPM at 4.1-3. Despite the obvious significance of the 2003 Warning Letter, STAAR failed to disclose its existence to the investors. (SAC ¶ 79).

A month later, the FDA published the 2003 Warning Letter on its website. (Id. ¶ 80). STAAR's stock price dropped 17.5% the same day. (*Id.*). Almost immediately thereafter, STAAR held a conference call where analysts criticized STAAR for withholding such important information. (*Id*. ¶¶ 81–82). One analyst lamented that any violations that "could delay the approval of [MICL] . . . seems to be pretty material to me, material information." (*Id*. ¶ 82). As a follow-up to the Warning Letter, the FDA conducted a re-audit of the California facility and issued a second Form 483 containing 36 observed deviations from the FDA requirements. (*Id*. ¶ 83). This time, STAAR disclosed the identified violations, resulting in another 38% hit to its shares. (*Id.*).

STAAR responded to the FDA's letter in November 2004. (Compl. ¶ 84). In July 2005, STAAR announced that it had received a responsive letter from the FDA. (*Id.* ¶ 85). The FDA letter requested that STAAR provide additional information related to the Form 483 observations and presented the FDA's conclusion that based on STAAR's earlier responses STAAR had "failed to adequately correct numerous violations" noted in the Form 483. (*Id.*). The FDA Letter gave STAAR ten calendar days to respond. (*Id.*). STAAR's shares fell another 40%. (*Id.*). The FDA finally approved the MICL in December 2005. (Id. ¶ 86).

   2.   **TICL Approval**

STAAR next began the process to approve its TICL product. (Compl. ¶ 87). Between February 15, 2007 and March 14, 2007, the FDA conducted an inspection of

---

**CIVIL MINUTES—GENERAL**                                                                                              4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**                    Date:  **November 14, 2016**

Title:      Kevin Forestal -*v*- Barry G. Caldwell, et al.

STAAR's TICL clinical study procedures, practices, and documentation. (*Id.* ¶ 90). At the close of the inspection, the FDA identified eight inspectional observations on Form 483. (*Id.* ¶ 91). STAAR responded on April 5, 2007, but the FDA found the responses to be inadequate. (*Id.*). On June 26, 2007, the FDA issued another Warning Letter to STAAR (the "2007 Warning Letter"), noting four areas of noncompliance observed during the inspection. STAAR disclosed the 2007 Warning Letter on June 27, 2007 and submitted a written response to the FDA on July 31, 2007. (*Id.*). The FDA found the response insufficient and placed an integrity hold on STAAR's application for approval until certain violations were remedied and successfully audited by a third party. (*Id.* ¶ 92). The integrity hold was lifted on June 21, 2009. (*Id.* ¶ 93).

STAAR submitted several filings to the SEC between 2009 and 2014 describing the steps that STAAR was taking to come into compliance with the FDA's procedures. (Compl. ¶¶ 94–99). On March 12, 2014, STAAR filed a 2013 Form 10-K, in which STAAR did not identify any observed deficiencies resulting from a 2013 FDA inspection of STAAR's facilities or the issuance of any Form 483s. (*Id.* ¶ 100). The form stated that STAAR "believes that it is substantially in compliance with the FDA's Quality System Regulations and Medical Device Reporting [R]egulations" and explained that STAAR's prior violations did not "warrant regulatory follow-up at this time . . . ." (*Id.* ¶¶ 100–01).

Contrary to STAAR's assertions in the 2013 Form 10-K, STAAR knew that during the FDA's August 2013 inspection of STAAR's facility in Nidau, Switzerland, the FDA found multiple significant deficiencies in STAAR's manufacturing procedures. (Compl. ¶ 101). As a result of its 2013 inspection, the FDA issued a Form 483 to STAAR's management. (*Id.*). Although the Form 2013 10-K asserted that regulatory follow-up was not warranted, by its nature the Form 483 requires regulatory follow-up. (*Id.*). And STAAR independently knew that it had significant and widespread quality control problems at the Monrovia facility due to the consolidation process; it could have expected that regulatory follow-up would be required. (*Id.*). Moreover, while the Form 10-K stated that STAAR believed it was substantially in compliance with the FDA's Quality System Regulations, starting in February 2014 the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**                    Date:  **November 14, 2016**

Title:     Kevin Forestal -v- Barry G. Caldwell, et al.

FDA had repeatedly alerted management to severe violations of its Quality Systems Regulations in the Monrovia facility.  (*Id.*).

On February 10, 2014, the FDA began an inspection of STAAR's Monrovia facility.  (Compl. ¶ 105).  Once again, STAAR was unable to demonstrate that critical design controls had been implemented.  (*Id.* ¶ 106).  STAAR also lacked the required Design History File.  (*Id.* ¶ 108).  At the conclusion of the 2014 inspection, the FDA inspector issued a Form 483, which was conveyed to Santos and Caldwell.  (*Id.*).  On May 21, 2014, the FDA issued yet another Warning Letter, addressed to then-CEO Barry Caldwell (the "2014 Warning Letter").  (*Id.* ¶ 115).  STAAR failed to publish the 2014 Warning letter; it was not disclosed until June 30, 2014, when it was published on the FDA's website.  (*Id.* ¶ 136).

### B.  The *Todd* Securities Action

On July 8, 2014, a securities class action was filed on behalf of investors who acquired STAAR securities between November 1, 2013 and June 30, 2014.  (*See Todd v. STAAR Surgical*, CV 14-5263-MWF (GJSx) (the "Todd Action"), Complaint ("*Todd* Complaint") (*Todd* Action, Docket No. 1); *see also* Compl. ¶ 4 n.1 (discussing the *Todd* Action and incorporating by reference the *Todd* Complaint and several Minute Orders therein)).  On April 12, 2016, the Court denied a motion to dismiss, holding that a reasonable jury could find that STAAR intentionally misled shareholders by implying that was "in compliance with FDA regulations while knowing that an FDA inspector concluded otherwise."  (Order Denying Defendants' Motion to Dismiss ("*Todd* MTD Order") at 11 (*Todd* Action, Docket No. 134)).  The Court further held that "Defendants' failure to timely disclose the Form 483 and the Warning Letter provides a further inference of intentional deceit. . . . While it is of course true that the FDA would have disclosed the Warning Letter independent of STAAR's actions, Defendants' silence in light of their prior statements is telling."  (*Id.* at 25).

### C.  The *Forestal* Derivative Action

This action was commenced on June 21, 2016, when Plaintiff Kevin Forestal submitted his Verified Shareholder Derivative Complaint for the benefit of nominal

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**                    Date:  **November 14, 2016**

Title:        Kevin Forestal -*v*- Barry G. Caldwell, et al.

Defendant STAAR against members of its Board of Directors (the "Board") and executive officers. (Docket No. 1). Plaintiff alleges that the Board and executive officers engaged in a breach of fiduciary duty, and further alleged claims of abuse of control, gross mismanagement, and unjust enrichment, from November 1, 2013 to the present. (Compl. ¶¶ 150–175).

At the time the Complaint was filed, the Board consisted of eight directors: Defendants Mark Logan, Stephen Farrell, Caren Mason, Richard Meier, John Moore, J. Steven Roush, Louis Silverman, and William Wall. (Compl. ¶ 149). Meier, Moore, and Roush served as members of the Audit Committee, and in that capacity were responsible for reviewing STAAR's annual and quarterly financial reports and for reviewing the integrity of STAAR's internal controls. (*Id.*). The Complaint concludes that Meier, Moore, and Roush allowed STAAR to disseminate false and misleading statements in its SEC filings and caused the internal control failures that resulted in the declining value of STAAR's stock. (*Id.*).

The Complaint further alleges that Moore and Logan each signed the 2013 Form 10-K, which contained false and misleading statements regarding STAAR's compliance with FDA requirements, as described above. (Compl. ¶ 149(c)).

Finally, Mason currently serves as both CEO and President of STAAR, in addition to serving on the Board. (Compl. ¶ 149(b)). As CEO and President, Mason receives "substantial monetary compensation and other benefits." (*Id.*). In addition, in STAAR's Proxy Statement, filed May 27, 2015 (the "2015 Proxy"), the company states that Mason lacks independence. (*Id.*).

## II.    REQUEST FOR JUDICIAL NOTICE

STAAR requests the Court take judicial notice of certain documents not attached to the Complaint. (*See* Request for Judicial Notice in Support of Nominal Defendant STAAR Surgical Company's Motion to Dismiss Plaintiff's Shareholder Derivative Complaint ("RJN") (Docket No. 16-2)). Plaintiff does not oppose the request.

Because Rule 12(b)(6) review is confined to the complaint, the court typically does not consider material outside the pleading (e.g., facts presented in briefs,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**                Date:  **November 14, 2016**

Title:     Kevin Forestal -v- Barry G. Caldwell, et al.

affidavits, or discovery materials).  *In re American Continental Corp./Lincoln Sav. & Loan Securities Litig.*, 102 F.3d 1524, 1537 (9th Cir.1996).  However, the court may consider matters that are proper subjects of judicial notice under Federal Rule of Evidence 201. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *see also Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

STAAR asks the Court to take judicial notice of certain SEC filings.  (RJN at 2).  The filings include the Schedule 14A Proxy Statement from May 2015 (the 2015 Proxy, defined above), and April 2016 ("2016 Proxy" (Docket No. 16-4)).  Courts can consider securities offerings and corporate disclosure documents that are publicly available. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n. 7 (9th Cir. 2008); *Lee*, 250 F.3d at 688.

STAAR also asks the Court to take judicial notice of its Restated Certificate of Incorporation (Docket No. 16-7), filed with the Delaware Secretary of State and dated December 21, 2007.  (RJN at 2).  STAAR's Certificate is also the proper subject of judicial notice because it is in the public record.  *See Thomas v. Starz Entm't LLC*, No. 215CV09239CASAFMX, 2016 WL 5421992, at *2 n.3 (C.D. Cal. Sept. 26, 2016) (slip copy); *see also Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1265 (C.D. Cal. 2010) (taking judicial notice of a certificate of incorporation filed in Delaware).

Finally, STAAR asks the Court to take judicial notice of a press release publicly issued by STAAR, dated June 10, 2014, which announces Caren Mason's election to the Board of Directors.  (RJN at 2).  "[T]he Court may take judicial notice of press releases." *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 814, 817 (C.D. Cal. 2004); *see also Arce v. Douglas*, 793 F.3d 968, 975 n.3 (9th Cir. 2015) (taking judicial notice of press release).

Accordingly, the Court **GRANTS** STAAR's Request for Judicial Notice.

---

**CIVIL MINUTES—GENERAL**                                                              8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 16-4492-MWF (GJSx)**    Date:  **November 14, 2016**

Title:    Kevin Forestal -v- Barry G. Caldwell, et al.

### III. MOTION TO DISMISS

#### A. Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013)

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the Complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, No. 13-56644, 2016 WL 5389307, at *2 (9th Cir. Sept. 27, 2016) (as amended) (quoting *Iqbal*, 556 U.S. at 679). Where the facts as pleaded in the Complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

| | |
|---|---|
| Case No.  **CV 16-4492-MWF (GJSx)** | Date:  **November 14, 2016** |

Title:     Kevin Forestal -*v*- Barry G. Caldwell, et al.

alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Properties*, 751 F.3d at 996–97; *see also Somers*, 729 F.3d at 960.

    **B.**    <u>**Pleading Under Rule 23.1**</u>

In addition to complying with the requirements of Federal Rule of Civil Procedure 8 and surviving a challenge under Rule 12(b)(6), in a derivative shareholder action a plaintiff must also comply with the requirements of Rule 23.1.  Because STAAR is incorporated in Delaware, the Court applies Delaware substantive law to the dispute.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98–99 (1991).

Under Delaware law, "[i]n most situations, the board of directors has sole authority to initiate or to refrain from initiating legal actions asserting rights held by the corporation," including claims of breach of fiduciary duty, unjust enrichment, and so on, as alleged in this action.  *White v. Panic*, 783 A.2d 543, 550 (Del. 2001).  Accordingly, a shareholder who wishes to bring such claims must make a pre-suit demand on the board for action.  *See Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 366–67 (Del. 2006).  An exception arises when the shareholder can show that such a demand would be futile "because the directors are incapable of making an impartial decision regarding whether to institute such litigation." *Id.* Plaintiff failed to make a pre-suit demand on the board, and thus must show demand futility in order to have standing to pursue his claims.  Under Federal Rule of Civil Procedure 23.1, Plaintiff must state with particularity "the reasons for not obtaining the action or not making the effort."  *Id.* 23.1(b)(3)(B).

This feature of shareholder derivative actions is now codified in Rule 23.1 of the Federal Rules of Civil Procedure, which requires that in any derivative action, the complaint "must . . . state with particularity: . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and . . . the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. Proc. 23.1(b)(3)(A)-(B); *Silicon Graphics,* 183 F.3d at 990 ("A shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile.").  A derivative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 16-4492-MWF (GJSx)**              Date:  **November 14, 2016**

Title:      Kevin Forestal -*v*- Barry G. Caldwell, et al.

action is an extraordinary process where courts permit "a shareholder to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own." *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010) (quoting *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983)).  Because of the extraordinary nature of a shareholder derivative suit, Rule 23.1 establishes stringent conditions for bringing such a suit.  *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008) ("[S]trict compliance with Rule 23.1 and the applicable substantive law is necessary before a derivative suit can wrest control of an issue from the board of directors.").

Rule 23.1 does not govern the analysis for determining whether demand would be futile.  That is a matter of substantive law for which the Court looks to the law of the state of incorporation – in this case Delaware.  *Silicon Graphics*, 183 F.3d at 989–90; *see also Kamen*, 500 U.S. at 96–97 ("In our view, the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.' . . . Thus, in order to determine whether the demand requirement may be excused by futility in a derivative action . . . we must identify the source and content of the substantive law that defines the demand requirement in such a suit").

The Court thus turns to the Delaware law of futility.

C.     **Demand Futility**

Delaware law has established two tests for determining demand futility, depending on the nature of the claim.  When challenging a board action, or conscious inaction, that could be subject to the business judgment rule, the Court applies the two-prong test articulated in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984).  As explained in *Aronson*, a plaintiff establishes demand futility when "under the particularized facts alleged a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment."  473 A.2d at 814.

In situations where no particular action of the board has been challenged, that is "where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties[,]" *Wood v. Baum*, 953 A.2d 136, 140 (Del.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 16-4492-MWF (GJSx)**                    Date:  **November 14, 2016**

Title:     Kevin Forestal -*v*- Barry G. Caldwell, et al.

2008), the trial court must apply the test set out in *Rales v. Blasband*, 634 A.2d 927, 930 (Del. 1993). "The *Rales* test requires that the plaintiff allege particularized facts establishing ***a reason to doubt*** that 'the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.'"  *Wood*, 953 A.2d at 140 (quoting *Rales*, 634 A.2d at 934) (emphasis added). The disqualifying interest or lack of independence must afflict one half of the board. *See Rales*, 634 A.2d at 933 (citing Ernest L. Folk, III, Rodman Ward, Jr., & Edward P. Welch, *Folk on The Delaware General Corporation Law* § 327.4.1.1 (1992)).

### 1.      Whether Logan, Meier, and Moore Were Interested

A director is considered incapable of impartially considering a demand, when he or she faces a "'***substantial likelihood*** of director liability . . . .'"  *Silicon Graphics*, 183 F.3d at 990 (emphasis added); *In re Baxter Intern., Inc. Shareholders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) ("Although a short and plain statement showing that the pleader is entitled to relief is normally sufficient to state a claim, it does not satisfy the requirement of pleading more than a mere threat of liability.").  Only three of the Board Defendants were board members at the time of the events now at issue:  Logan, Meier, and Moore.  (Compl. ¶¶ 22–29).  Logan became Chairman of the Board in November 2010; Meier became a Director of STAAR in June 2009; and Moore became a Director of STAAR in January 2008.  (Compl. ¶¶ 23, 25–26).  Accordingly, only Logan, Meier, and Moore would have faced a substantial likelihood of liability at the time the Complaint was filed.

STAAR contends that Plaintiff's claims are barred because the Board Directors are exculpated from liability pursuant to Delaware Code title 8, section 102(b)(7), which permits corporations to adopt a provision in the certificate of incorporation limiting the personal liability of directors for damages.  A corporation that adopts an exculpatory provision under § 102(b)(7) exempts its directors from claims for monetary damages alleging a breach of their duty of due care.  Corporations, however, may not exculpate directors from liability for breaches of the duty of loyalty, "acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law," and "transaction[s] from which the director derived an improper personal benefit." Del. Code Ann. tit. 8, § 102(b)(7); *Mapiede v. Townson*, 780 A.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**     Date: **November 14, 2016**

Title:     Kevin Forestal -*v*- Barry G. Caldwell, et al.

1075, 1095 (Del. 2001). STAAR included a § 102(b)(7) provision in its certificate of incorporation such that the Director Defendants are subject to the protections permitted by the statute. (RJN, Ex. D at 4).

Plaintiff contends in a footnote that the exculpatory provision cannot be the basis for a dismissal at this stage because it is an affirmative defense. (Opp. to Mot. to Dismiss at 19 n.14). "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). The Court has taken judicial notice of STAAR's certificate of incorporation, which, if applicable in this action, is an obvious bar to Plaintiff's claims. (RJN, Ex. D at 4). Because the applicability of the exculpatory provision does not raise disputed issues of fact, the affirmative defense may be properly raised on a motion to dismiss. *Id.* (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam)).

Due to the exculpatory provision, the Board Defendants cannot be held liable for monetary damages due to a breach of the duty of due care. Their personal liability is limited to breaches of the duty of loyalty, bad faith conduct, intentional misconduct, or knowing violations of the law. Therefore, to plead that the Board Defendants face a substantial likelihood of liability, such that they could not have independently considered a demand, the complaint must include particularized facts showing that there is a substantial likelihood (if the facts are proven) that the directors will be held liable on one of these grounds. *See Wood*, 953 A.2d at 140 ("a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts") (quoting *Guttman*, 823 A.2d at 501); *Baxter*, 654 A.2d at 1270 ("When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption").

Accordingly, Plaintiff must allege, with specificity, that Logan, Meier, and Moore acted, *inter alia*, in violation of their duty of good faith (the only basis for exculpation at issue in this action). A violation of the duty of good faith will be found

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**               Date:  **November 14, 2016**

Title:       Kevin Forestal -*v*- Barry G. Caldwell, et al.

if a "fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for [his or her] duties." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006) (holding that evidence was sufficient to establish that CEO and corporate general counsel did not breach fiduciary duties when they concluded that president could not be terminated for cause, and thus entitled to $130 million severance package after 14 months of employment). Because the Board Defendants are exculpated from liability except for claims based on fraudulent, illegal, or bad faith conduct, Plaintiff must allege scienter, that is "actual or constructive knowledge that [the Board Defendants'] conduct was improper." *See Wood*, 953 A.2d at 141. "Therefore, the issue before [the Court] is whether the Complaint alleges particularized facts that, if proven, would show that . . . [Logan, Meier, and Moore] breached 'in bad faith' the covenant of good faith and fair dealing." *Id.*

According to the Complaint, ***Logan*** became Chairman of the Board in November 2010. (Compl. ¶ 23). In 2013, Logan signed and authorized public filings with the SEC that he knew were false and misleading. Among these filings was the 2013 Form 10-K, which asserted that STAAR was substantially in compliance with the FDA's Quality System Regulations. (Compl. ¶ 149). In fact, as discussed above, the FDA had very recently issued a Form 483 to STAAR detailing three significant deviations from FDA regulations at the Nidau facility in Switzerland. (Compl. ¶ 104). STAAR had a history of trouble obtaining FDA compliance; is a small company; and FDA approval of the TICL product was critical to STAAR's future success. Therefore, Plaintiff has pled with sufficient particularity that at the time Logan signed the 2013 Form 10-K, Logan knew that STAAR had again failed to obtain compliance with the FDA's Quality System Regulations. It is a potentially reasonable inference from the foregoing allegations that Logan knew the 2013 Form 10-K, which he authorized, was false and misleading. On a motion to dismiss, this inference is sufficient because it is based on specific facts.

***Meier*** became a member of the Board in June 2009. (Compl. ¶ 25). The Complaint does not allege that Meier signed or authorized the 2013 Form 10-K. The Complaint does allege that Meier was a member of the Audit Committee during the relevant time period. (*Id.*). As a member of the Audit Committee, Meier was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**                    Date:  **November 14, 2016**

Title:      Kevin Forestal -*v*- Barry G. Caldwell, et al.

responsible for reviewing STAAR's annual and quarterly financial reports and reviewing the integrity of STAAR's internal controls. (Compl. ¶ 149).

*Moore* became a member of the Board in January 2008. (Compl. ¶ 26). Like Logan, Moore signed the 2013 Form 10-K; it is a potentially reasonable inference from that act and the surrounding circumstances that Moore knew the statements contained in the 2013 Form 10-K were false and misleading. (Compl. ¶ 149). And, like Meier, Moore was a member of the Audit Committee, responsible for reviewing STAAR's annual and quarterly financial reports as well as the integrity of STAAR's internal controls. (*Id.*).

At the hearing, STAAR emphasized to the Court that membership on an Audit Committee is not sufficient in itself to expose board members to a substantial risk of litigation. Here, however, Plaintiff alleges more. *See In re Intuitive Surgical S'holder Derivative Litig.*, 146 F. Supp. 3d 1106, 1121 (N.D. Cal. 2015) (finding membership on Audit Committee indicated possible personal liability for directors where "Plaintiff . . . pleaded sufficient particularized facts to show that beyond the directors' membership in the Audit Committee, they knew of the defect and regulatory deficiencies."). Meier and Moore's responsibilities as members of the Audit Committee included reviewing the integrity of STAAR's internal controls — the same internal controls that had begun to receive renewed scrutiny from the FDA starting in about 2013. Because the underlying conditions giving rise to STAAR's compliance issues were within the Audit Committee's purview, it is a potentially reasonable inference that Meier and Moore knew of the ongoing violations but nevertheless failed to act.

"Delaware law states that director liability may arise for the breach of the duty to exercise appropriate attention to potentially illegal corporate activities from 'an unconsidered failure of the board to act in circumstances in which due attention would, arguably, have prevented the loss.'" *In re Abbott Labs. Derivative Shareholders Litig.*, 325 F.3d 795, 808 (7th Cir. 2003) (quoting *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)). In *Abbott*, the Seventh Circuit found that Plaintiff sufficiently alleged liability in circumstances very similar to these:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**                     Date:  **November 14, 2016**

Title:       Kevin Forestal -*v*- Barry G. Caldwell, et al.

> Given the extensive paper trail . . . concerning the violations and the inferred awareness of the problems, the facts support a reasonable assumption that there was a "sustained and systematic failure of the board to exercise oversight," in this case intentional in that the directors knew of the violations of law, took no steps in an effort to prevent or remedy the situation, and that failure to take any action for such an inordinate amount of time resulted in substantial corporate losses, establishing a lack of good faith. We find that six years of noncompliance, inspections, 483s, Warning Letters, and notice in the press, all of which then resulted in the largest civil fine ever imposed by the FDA and the destruction and suspension of products which accounted for approximately $250 million in corporate assets, indicate that the directors' decision to not act was not made in good faith and was contrary to the best interests of the company.

*Id.* at 809.

Other Delaware courts have also found that because "shareholders are entitled to honest communication from directors, given with complete candor and in good faith" directors who issue false and misleading statements to shareholders "face a significant likelihood of personal liability . . . and may be considered to be interested for purposes of demand." *In re INFOUSA, Inc. Shareholders Litig.*, 953 A.2d 963, 991 (Del. Ch. 2007). Taking as true the allegations in the Complaint, and drawing all reasonable inferences therefrom, Logan, Meier, and Moore reasonably could be found directly responsible for dishonest and misleading communications with shareholders, and thus can be considered interested for purposes of demand.

At the hearing, counsel for STAAR contended that *Abbott* is distinguishable because that case was more extreme, involving years of FDA Form 483s, Warning Letters, and so on. But here, like in *Abbott*, STAAR indisputably received a series of FDA Form 483s and Warning Letters over the course of a decade. Moreover, the fact that STAAR had a period of relative transparency, during which it truthfully informed shareholders that it was meeting FDA expectations, does not distinguish *Abbott*. Although increased transparency is laudable, the Court could alternatively infer that Logan, Meier, and Moore knew what transparency with its stockholders should have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**               Date:  **November 14, 2016**

Title:     Kevin Forestal -v- Barry G. Caldwell, et al.

entailed, but declined to follow through on those responsibilities once it became clear that STAAR's facilities were again in violation of the FDA's regulations.

Accordingly, the Court concludes that Plaintiff has sufficiently alleged that Logan, Meier, and Moore face a significant likelihood of personal liability for their non-exculpatory conduct in issuing false and misleading statements to shareholders regarding STAAR's FDA compliance.

### 2.   Whether Mason Lacked Independence

To show that demand would be futile, Plaintiff must show that four of the eight Board Defendants were interested or lacked independence.  *See, e.g.*, *In re INFOUSA, Inc.*, 953 A.2d at 989–90 (stating that a plaintiff must raise reason to doubt "that a majority — or in a case where there are an even number of directors, exactly half — of the board was incapable of considering demand.").  Plaintiff alleges that Mason, who at the time the Complaint was filed served as both CEO of STAAR and a member of the board, lacked independence.

A director may be found to lack independence "if he or she is beholden to the allegedly controlling entity, as when the entity has the direct or indirect unilateral power to decide whether the director continues to receive a benefit upon which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider the corporate merits of the challenged transaction objectively."  *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002).  Plaintiff contends that Mason was not independent at the time the Complaint was filed because at that time she was principally employed by STAAR as its CEO, "pursuant to which she received and continues to receive substantial monetary compensation and other benefits."  (Opp. to Mot. to Dismiss at 12; *see also* Compl. ¶ 149(b)).

Simply being employed by STAAR while also serving on its board is insufficient to show a lack of independence.  Courts in this District, applying Delaware law, have held that "demand futility cannot be pled merely on the basis of allegations that directors acted or would act to preserve their positions" because "[i]f these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**                    Date:  **November 14, 2016**

Title:      Kevin Forestal -*v*- Barry G. Caldwell, et al.

allegations were sufficient to show lack of independence, every inside director would be disabled from considering a pre-suit demand." *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003).  Something more than simple compensation is required — and most typically, that something is the undue influence or control of another board member.

"Under the great weight of Delaware precedent, senior corporate officers generally lack independence for purposes of evaluating matters that implicate the interests of a ***controller***." *In re Ezcorp Inc. Consulting Agreement Derivative Litig.*, No. CV 9962-VCL, 2016 WL 301245, at *35 (Del. Ch. Jan. 25, 2016), *reconsideration granted in part*, (Del. Ch. Feb. 23, 2016), *and appeal refused sub nom. MS Pawn Corp. v. Treppel*, 133 A.3d 560 (Del. 2016), *and appeal refused sub nom. Roberts v. Treppel*, 133 A.3d 560 (Del. 2016) (emphasis added) (collecting cases).  "While the general Delaware rule holds that neither a director nor an executive appointed by a controlling shareholder are per se incapable of considering demand upon the company, where an executive's considerable salary is set by an otherwise dominated board, this Court may reasonably infer that a director-executive is dominated." *In re Tyson Foods, Inc.*, 919 A.2d 563, 598 (Del. Ch. 2007).

Crediting as true the Complaint's allegation that Mason is employed full-time as STAAR's CEO, and compensated accordingly, Plaintiff fails to allege any facts showing that Mason lacked independence.  Under the existing case law, compensation alone is not sufficient to show a lack of independence.  Plaintiff acknowledges that it cannot show that Mason lacked independence from a controller:  There is nothing to indicate that Mason was beholden to Logan, Meier, and Moore such that she feared she would lose her compensation or employment benefits for opposing them.

At the hearing, Plaintiff pointed to the fact that in the 2015 Proxy, STAAR listed Mason as non-independent "under the rules of the NASDAQ Global Market and the SEC."  (RJN, Ex. B).  Plaintiff contended that this listing effectively constituted an admission by STAAR that Mason lacked independence.  However, independence as defined for purposes of demand futility is different from independence under the NASDAQ rules.  Although Delaware courts regard stock exchange independence requirements as "a useful source for [the] court to consider when assessing an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 16-4492-MWF (GJSx)**	Date:  **November 14, 2016**

Title:     Kevin Forestal -*v*- Barry G. Caldwell, et al.

argument that a director lacks independence, . . . the stock exchange requirements are not dispositive." *Sandys v. Pincus*, No. CV 9512-CB, 2016 WL 769999, at *9 (Del. Ch. Feb. 29, 2016). Delaware courts so conclude because, while "[s]tock exchange rules may involve bright-line tests for independence . . . Delaware law requires 'a case-by-case fact specific inquiry based on well-pled factual allegations.'" *Id.* (quoting *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 61 (Del. Ch. 2015)). Here, without any other dispositive facts suggesting that Mason lacks independence, the designation in the 2015 Proxy is not sufficient to tip the balance in favor of Plaintiff.

Accordingly, the Motion to Dismiss is **GRANTED.** Because Plaintiff conceivably could plead with specificity facts that show Mason lacked independence, however, Plaintiff will be granted leave to amend. *See Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014) ("A complaint should not be dismissed without leave to amend unless amendment would be futile.").

## IV.     MOTION FOR SANCTIONS

STAAR urges the Court to impose sanctions on Plaintiff for pursuing his derivative action although he had "no hope of meeting the demand or demand futility requirement under Federal Rule of Civil Procedure 23.1." (Mot. for Sanctions at 5–6).

"An attorney is subject to Rule 11 sanctions, among other reasons, when [she or he] presents to the court 'claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]'" *Holgate v. Baldwin*, 425 F.3d 671, 675–76 (9th Cir. 2005) (quoting Fed. R. Civ. P. 11(b)(2)). "[T]he word 'frivolous' . . . denote[s] a filing that is both baseless and made without a reasonable and competent inquiry." *Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011) (quoting *Holgate*, 425 F.3d at 676).

Plaintiff's action is not frivolous. The Court has found in favor of Plaintiff as to three of the eight Board Defendants, and has granted Plaintiff leave to amend as to the fourth because it is conceivable that with more specific pleading Plaintiff could meet

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 16-4492-MWF (GJSx)**            Date:  **November 14, 2016**

Title:     Kevin Forestal -*v*- Barry G. Caldwell, et al.

the demand futility requirement (putting aside the issue of the current Board of Directors).

Accordingly, the Motion for Sanctions is **DENIED.**

## V.     CONCLUSION

For the foregoing reasons, the Motion to Dismiss is **GRANTED.**  The Court will permit Plaintiff *leave to amend* the Complaint.  The Court recognizes that the existence of the new majority on the Board of Directors raises significant issues, but does not now address those issues.  If Plaintiff wishes to file a First Amended Complaint, he shall do so on or before **January 9, 2017**.  STAAR shall file any responsive pleading or motion within 21 days of Plaintiff serving it with a First Amended Complaint.  The parties shall conduct a conference of counsel as required by Local Rule 7-3.

The Motion for Sanctions is **DENIED.**

IT IS SO ORDERED.